**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **TOMMY JOE MILLER,** | * |
| **Plaintiff,** | * |
| v. | Case No.: GJH-18-2022 |
| | * |
| **CSX TRANSPORTATION, INC.,** | |
| | * |
| **Defendant.** | |
| | * |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Tommy Joe Miller brought this workplace injury and discrimination action alleging that Defendant CSX violated (1) the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq.*; (2) the Family and Medical Leave Act (FMLA), 45 U.S.C. § 2601, *et seq.*; (3) Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*; and (4) Section 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* ECF No. 16. Plaintiff has since conceded that his FMLA claim and some of his Rehabilitation Act allegations are barred by statutes of limitations and should be dismissed. ECF No. 19 at 1. Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 17. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss will granted in part and denied in part.

**I.  BACKGROUND[1]**

Plaintiff worked for Defendant from 2005 until his termination in 2016. ECF No. 16 ¶¶ 11, 24. During his tenure, he held different positions including serving in a heavy labor role as a

---
[1] Unless otherwise stated, the background facts are taken from Plaintiff's Amended Complaint, ECF No. 16, and are presumed to be true.

1

machinist repairing locomotive engines for freight transportation and working in a less physically demanding role as a sedentary contract supervisor. *Id.* ¶ 11.

Plaintiff has a history of back and leg pain. *Id.* ¶ 12. He has diagnoses of L5 radiculopathy, scoliosis and spondylosis and had a lumbar nerve root decompression in 2013. *Id.* Beginning in July of 2015, while Plaintiff was employed as a machinist, Defendant assigned Plaintiff overtime shifts that aggravated Plaintiff's pre-existing condition and that he could not complete because of pain and numbness. *Id.* ¶¶ 12, 15. Plaintiff approached various managers to inform them that working double shifts would exacerbate his back problems. Plaintiff's union representative also told a supervisor that Plaintiff could not be assigned work requiring double shifts because of his medical conditions. *Id.* ¶ 13. But rather than permitting Plaintiff not to work overtime or reassigning Plaintiff to a less physically strenuous position, Defendant continued to assign Plaintiff heavy labor work involving overtime shifts. *Id.* ¶¶ 13, 42.

On October 4, 2015, Defendant presented Plaintiff with a letter concerning attendance violations related to Plaintiff's failure to finish working an overtime shift. *Id.* ¶ 16. Plaintiff responded to the letter by explaining again that working a full double shift exacerbated his back and leg pain. *Id.* ¶ 16. A manager responded that another, older employee was able to work double shifts and that Plaintiff would receive a "charge letter" if he failed to finish a double shift again. *Id.*

At this point, Plaintiff applied for FMLA leave. *Id.* ¶ 17. Defendant approved Plaintiff for intermittent FMLA leave, which he used on October 21, 22, and 23, 2015. *Id.* On October 28, 2015, Plaintiff visited the Parkway Neuroscience and Spine Institute and was told he should stop working because his back injuries had been exacerbated. *Id.* ¶ 18. Plaintiff stopped working, began physical therapy, and then underwent a spinal fusion surgery on February 12, 2016. *Id.*

Plaintiff's physician completed a Certificate of Ongoing Illness or Injury (COII) every 45 days, and Defendant received these forms at least through June 2016. *Id.* ¶ 20. A May 23, 2016 letter advised Plaintiff that if he planned to be out of work longer then July 5, 2016, he should have his physician complete a COII form at that time. *Id.* ¶ 21. The letter did not explain that a failure to complete a COII form by the deadline would result in termination from employment or any discipline. *Id.* On June 28, 2016, Plaintiff dropped off a COII form at his physician's office during a regularly scheduled visit. *Id.* ¶ 22. His physician had always sent COII forms directly to Defendant in the past. *Id.* ¶ 23. However, on July 21, 2016, Plaintiff received a certified letter from Defendant advising that he was charged with job abandonment and failure to protect his seniority because Defendant had not received his updated COII. *Id.* ¶ 24. The letter explained that an appeal could be filed within fifteen days requesting a hearing. *Id.*

Plaintiff drove to his physician's office and learned that the office had been delayed in sending the updated COII form. *Id.* ¶ 25. Plaintiff's physician faxed the form supporting Plaintiff's continued leave to Defendant on July 25, 2016. *Id.* ¶ 26. An investigative hearing was held on August 3, 2016 where Plaintiff presented the letter from his physician's office and explained what had caused the delay by his physician's office in submitting the form. *Id.* ¶ 27. Although Plaintiff demonstrated that he had not abandoned his position but instead was on an approved medical leave, Defendant nonetheless terminated Plaintiff's employment. *Id.* Plaintiff filed this suit on July 3, 2018. ECF No. 1.

## II.     STANDARD OF REVIEW

Defendant moves to dismiss Plaintiff's Amended Complaint on the ground that it fails to state a claim upon which relief can be granted. When deciding a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable

inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435. 440 (4th Cir. 2011) (citations and internal quotation marks omitted). Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But to survive a motion to dismiss invoking Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662. 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544. 570 (2007)). The factual allegations must be more than "labels and conclusion . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *See id.* at 679 (citing Fed. Rule Civ. Proc. 8(a)(2)).

### III.     DISCUSSION

Because Plaintiff concedes that his FMLA claims (Count II) are barred by a statute of limitations, those claims will be dismissed without further analysis. The Court next addresses the sufficiency of Plaintiff's FELA, Rehabilitation Act, and ERISA allegations in turn.

### A. FELA – Negligent Assignment (Count I)[2]

The FELA provides the exclusive remedy for railroaders who are injured because of an employer's negligence while the employee is working in interstate commerce. *See Wabash R.R. Co. v. Hayes,* 234 U.S. 86, 89 (1914); *Dixon v. CSX Transp., Inc.,* 990 F.2d 1440, 1442 n.2 (4th Cir. 1993). To state a FELA claim, a plaintiff must allege that the employer owed the plaintiff a particular duty of care and that a breach of that duty caused the plaintiff damages. *Adams v. CSX Transp.,* Inc., 899 F.2d 536, 539 (6th Cir. 1990). A railroad has a duty to assign an employee work for which he is reasonably suited in light of any known disabilities and to avoid aggravating those known injuries. *E.g.*, *Fletcher v. Union Pacific R.R. Co.,* 621 F.2d 902, 909–10 (8th Cir.1980) (collecting cases); *Dunn v. Conemaugh & Black Lick R.R.,* 267 F.2d 571 (3d Cir. 1959) (imposing liability where employee who underwent major abdominal surgery known to the employer was nonetheless assigned to perform heavy lifting, which caused the employee injuries).[3] The railroad breaches this duty if it assigns an employee work that is unreasonable given the employee's capacity. *See id.*

According to Plaintiff's Amended Complaint, Defendant assigned Plaintiff work that was beyond his capacity despite being on notice of Plaintiff's disability. ECF No. 16 ¶¶ 12–15. Specifically, although Plaintiff told Defendant that working overtime shifts would exacerbate his back problems, Defendant nonetheless continued to assign Plaintiff heavy labor work that

---

[2] Plaintiff's Opposition to Defendant's Motion to Dismiss argues that Defendant "is liable under FELA because it failed to provide sufficient personnel." ECF No. 19 at 6. However, there are no allegations supporting such a claim in the Amended Complaint. ECF No. 16.

[3] *See also Moreno v. Grand Victoria Casino*, 94 F. Supp. 2d 883, 895 (N.D. Ill. 2000) ("employer owes a duty to assign employees to work for which they are reasonably suited."); *Massimiani v. Monongahela Ry. Co.*, 339 F. Supp. 832, 833 (W.D. Pa. 1972) ("the railroad has a duty not to aggravate known disabilities in an employee by negligently assigning that employee to perform work which reasonable men would realize might aggravate his disability."); *McCarra v. Illinois Cent. R. Co.*, 798 So. 2d 252, 259 (La. App. 5 Cir. September 25, 200) ("A railroad has a duty to assign employees to work for which they are reasonably suited and breaches that duty if it negligently assigns an employee to perform work beyond his capacity.").

required double shifts. ECF No. 13. Taking the factual allegations as true, Plaintiff's back and leg pain was aggravated by Defendant negligently assigning him to perform work that foreseeably would exacerbate his disability. *Id.* ¶¶ 12–15. Thus, Plaintiff has sufficiently alleged that Defendant negligently assigned him work that was beyond his capacity in violation of FELA.

Defendant's argument that it assigned Plaintiff suitable work because Plaintiff was able to perform the work of a machinist during a regular shift fails. Drawing all reasonable inferences in Plaintiff's favor, the Plaintiff was required to work double shifts and made unsuccessful attempts to do so. *Id.* For example, a manager told the Plaintiff that if he failed to complete a double shift again he would be disciplined. *Id.* ¶ 16. It is reasonable to draw the inference from this factual allegation that working overtime was made a mandatory part of his job. Because he was repeatedly assigned double shifts, the work exceeded Plaintiff's physical capacity.

Additionally, Defendant's reliance on *Consolidated Rail Corporation v. Gottshall* is misplaced. Defendant cites *Gottshall* to support its position that a claim of having "been given too much—not too dangerous—work" is insufficient to state a FELA claim. But that out of context quotation is not relevant here for two reasons. 512 U.S. 532, 558 (1994). First, based on the allegations in the Amended Complaint, "too much" work in Plaintiff's case did constitute unreasonably "dangerous" work because the extra time Plaintiff was required to work foreseeably exacerbated Plaintiff's pre-existing condition. Second, *Gottshall* did not address a negligent assignment claim alleged to have caused physical harm. Instead, *Gottshall* dealt with a negligent infliction of emotional distress claim, and specifically whether a "work-stress related claim" that arose "in the ordinary course of employment" fell "within the common law's conception of the zone of danger." *Id.* That alleging "stress" from "too much" work is

insufficient to state a negligent infliction of emotional distress claim says nothing about an employee's right to avoid an unreasonable risk of physical harm caused by a negligent assignment.

In sum, Plaintiff has sufficiently alleged a negligent assignment claim, and Defendant's motion will be denied as to Count I of the Amended Complaint.

### B. Rehabilitation Act (Count III)

Section 504 of the Rehabilitation Act states, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The same standards used to determine whether an employer violated the Americans with Disabilities Act (ADA) apply to Rehabilitation Act claims. *See id.* at § 794(d); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995).

Courts in this jurisdiction have applied a two-year statute of limitations to claims brought pursuant to the Rehabilitation Act. *See Magness v. Harford Cty.,* No. CV ELH-16-2970, 2018 WL 1505792, at *16 (D. Md. Mar. 27, 2018); *Bales v. Maryland Judiciary/Admin. Office of the Courts,* No. 15-CV-03293-JFM, 2016 WL 6879902, at *7 (D. Md. Nov. 22, 2016); *Bowen v. Maryland, Dep't of Pub. Safety & Corr. Servs.,* No. CV RDB-17-1571, 2018 WL 1784463, at *6 (D. Md. Apr. 12, 2018). To state a claim for discrimination under the Rehabilitation Act, a plaintiff must allege: (1) he is disabled; (2) he was otherwise qualified for the employment in question; and (3) he suffered an adverse employment action because of the disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

7

With these overarching principles in mind, the Court specifically considers whether Plaintiff has stated a failure-to-accommodate or retaliation claim pursuant to the Rehabilitation Act.

### i. Failure to Accommodate

To plead a failure-to-accommodate claim under the Rehabilitation Act, a plaintiff must allege that "(i) she qualifies as an 'individual with a disability' as defined in 29 U.S.C. § 705(20): (2) the [Defendant] had notice of her disability; (3) she could perform the essential functions of her job with a reasonable accommodation; and (4) the [Defendant] refused to make any reasonable accommodation." *See Reyazuddin v. Montgomery Cty., Maryland*, 789 F.3d 407, 414 (4th Cir. 2015). "A reasonable accommodation is one that 'enables [a qualified] individual with a disability . . . to perform the essential functions of [a] position.'" *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 580 (4th Cir. 2015) (quoting 29 C.F.R. § 1630.2(*o*)(1)(ii)) (alterations in original). Reasonable accommodations may include "job restructuring, [or] part-time or modified work schedules," 42 U.S.C. § 12111(9)(B), or "permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment," 29 C.F.R. § 1630.2(*o*) (Appendix) (2011); *see also Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). Further, an employer may fail to accommodate an employee in violation of the Rehabilitation Act by not reassigning the employee to another vacant position for which the employee is qualified. *Duffy v. Al Packer Ford, Inc.,* No. CIV. HAR 95-2202, 1996 WL 281563, at *4 (D. Md. May 13, 1996), *aff'd,* 108 F.3d 1371 (4th Cir. 1997). As part of the obligation to consider reasonable accommodation requests, the Rehabilitation Act "imposes upon employers a good-faith duty to engage [with their employees] in an interactive process to identify a reasonable accommodation." *Jacobs*, 780 F.3d at 580.

Here, Defendant does not dispute that Plaintiff alleges that he was disabled and that he suffered an adverse employment action when he was terminated. *See* ECF No. 17-1 at 23–25. Further, Plaintiff concedes that some of the allegations in the Amended Complaint occurred outside of the two-year statute of limitations period. ECF No. 19 at 1, 7. Specifically, to the extent that Plaintiff alleges Defendant failed to reasonably accommodate him in 2015 when Plaintiff told management that working double shifts would exacerbate his disability, those failure-to-accommodate claims are time barred since Plaintiff did not file suit until July 3, 2018. *Id.*

However, Plaintiff made additional requests for reasonable accommodations in July and August 2016 when he requested additional leave to recover from his spinal fusion surgery. ECF No. 16 ¶¶ 26, 27. Drawing all reasonable inferences in Plaintiff's favor, permitting Plaintiff to use his approved leave would have enabled him to eventually return to work where, as alleged, he could perform the essential functions of a machinist. The term "essential functions" means the fundamental job duties of the employment position. 29 C.F.R. § 1630.2(n)(1). The Amended Complaint emphasizes that Plaintiff was able to perform a machinist's fundamental job duties so long as he was not required to work overtime shifts. ECF No. 16 ¶ 29. Plaintiff also alleges that other "vacant, funded positions" existed that Plaintiff could have been reassigned to if he was unable to return to a heavy labor position because of his disability. *Id.* ¶ 42. In particular, Plaintiff suggests that he was fit for the more sedentary role of contract supervisor, a position he had previously held. *Id.* According to the Amended Complaint, Defendant did not engage in an interactive process with Plaintiff to identify whether permitting Plaintiff to use additional leave, allowing Plaintiff to eventually return to work as a machinist without mandating overtime shifts,

9

or reassigning Plaintiff to a sedentary contract supervisor role would reasonably accommodate Plaintiff's disability.

In sum, the Amended Complaint sufficiently pleads a timely failure-to-accommodate claim and Defendant's motion will be denied as to those allegations.

### ii. Retaliation

To state a claim for retaliation under the Rehabilitation Act, a plaintiff must allege that he engaged in a protected activity and that as a result the defendant took an adverse action against him. *Brady v. Bd. of Educ. of Prince George's Cty.*, 222 F. Supp. 3d 459, 474 (D. Md. 2016), *aff'd*, 707 F. App'x 780 (4th Cir. 2018). Under the burden shifting framework of *McDonnell Douglas,* if a legitimate non-retaliatory reason for the adverse action exists on the face of a complaint, then to properly plead a retaliation claim, Plaintiff must also allege facts demonstrating that the employer's proffered reason is a pretext for forbidden retaliation. *See S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cty.*, 819 F.3d 69, 78 (4th Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Defendant does not dispute that Plaintiff alleged he engaged in a protected activity by requesting to use leave as a reasonable accommodation or that Plaintiff's termination constitutes an adverse action, but Defendant argues that the factual allegations do not plausibly plead a causal relationship between the protected activity and Plaintiff's firing. ECF No. 17-1 at 27–28. However, "close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation." *Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017). Here, Plaintiff alleges that his physician submitted a form supporting Plaintiff's continued leave on July 25, 2016 and that days later, on August 3, 2016, Plaintiff was terminated for abandoning his position even though an investigative hearing

demonstrated that Plaintiff had not abandoned his position but was on approved medical leave. ECF No. 16 ¶ 26–27. This timeline demonstrates close temporal proximity between the activity protected by the Rehabilitation Act (i.e. making a reasonable accommodation request) and the adverse employment action and suffices to plead Plaintiff's *prima facie* case.

Defendant claims that Plaintiff's job abandonment constitutes a legitimate, non-retaliatory reason for firing Plaintiff, ECF No. 17-1 at 25-1, but the Amended Complaint includes allegations that indicate Defendant knew that Plaintiff had not abandoned his position even though he submitted his updated COII form late, ECF No. 16 ¶¶ 26–27. Specifically, the Amended Complaint indicates that Plaintiff provided a "reasonable explanation" for the untimely filing of his form, that the form was filed only a few weeks late, and that Plaintiff immediately took action to demonstrate that he had not abandoned his position but instead was on approved medical leave. *Id.* Assuming the truth of the factual allegations and drawing all reasonable inferences in Plaintiff's favor, it is not logical that given these facts Defendant would conclude that Plaintiff had abandoned his position and that this legitimate, non-retaliatory reason was the cause of his termination.

Taken together, Plaintiff has stated a retaliation claim, and Defendant's motion will be denied as to these allegations.

### C. ERISA (Count IV)

Pursuant to 29 U.S.C. § 1140, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]" 29 U.S.C. § 1140. This section of ERISA "prevents unscrupulous employers

11

from discharging" employees to stop them from obtaining benefits. *See Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 239 (4th Cir.1991) (collecting cases). According to the Amended Complaint, Plaintiff was terminated because he sought to access continued leave benefits. As described above, Defendant's position that Plaintiff was fired, not for requesting continued leave, but for job abandonment is refuted by Plaintiff's allegations, assumed to be true at this stage, that Plaintiff demonstrated he had not abandoned his position but was on approved medical leave. The Amended Complaint also includes factual allegations that support Plaintiff's claim that his firing was part of a pattern or practice by Defendant to interfere with employees' access to benefits. Thus, Plaintiff has sufficiently pled that he was discharged or discriminated against for exercising his rights under ERISA, and Plaintiff's ERISA claim will not be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted in part and denied in part. A separate Order shall issue.

Date: <u>May   3, 2019</u>                   /s/_____
                                             GEORGE J. HAZEL
                                             United States District Judge